**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |  |
|---|---|---|
| **ECOFACTOR, INC.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **-vs-** | § | **W-22-CV-00032-ADA** |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant* | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER

Before the Court is Defendant Google LLC's ("Google's") Motion to Transfer Venue to the Northern District of California. ECF No. 18. Plaintiff EcoFactor, Inc. ("EcoFactor") opposes the motion. ECF No. 83. Google filed a Reply to further support its motion. ECF No. 87. After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Google's motion to transfer venue to the Northern District of California.

## I.     FACTUAL BACKGROUND

In its complaint, EcoFactor claims Google infringes on U.S. Patent Nos. 8,131,497 ("the '497 Patent"), 8,432,322 ("the '322 Patent"), 8,498,753 ("the '753 Patent"), and 10,018,371 ("the '371 Patent") (collectively, the "Asserted Patents"), which relate to smart thermostat systems. ECF No. 1 ¶¶ 1, 4. EcoFactor, the owner of the Asserted Patents, is a privately held company with its principal place of business and headquarters in Palo Alto, California. *Id.* ¶ 5. Google is a limited liability company organized under the laws of the state of Delaware. *Id.* ¶ 6. Google's principal place of business is located in Mountain View, California. *Id.* Google is registered to do business in the State of Texas. *Id.* According to EcoFactor, Google operates a division called Google Nest that designs and manufactures smart thermostats. *Id.*   EcoFactor alleges that Google's smart

thermostats, smart HVAC systems, smart HVAC control systems, and components thereof infringe the Asserted Patents. *Id.* ¶ 10. Specifically, EcoFactor accuses Google's Nest Thermostat, Nest Learning Thermostat (3rd Generation), and Nest Thermostat E as well as Google's servers and backend cloud systems. *Id.* ¶¶ 18, 29, 40, 51. The Court will refer to these products collectively as the "Accused Products."

In addition to this case, EcoFactor has filed two other cases in this District alleging infringement of some or all of the Asserted Patents. *EcoFactor, Inc. v. ecobee, Inc.*, No. 6:22-cv-00033-ADA (W.D. Tex. Jan 10, 2022); *EcoFactor, Inc. v. Vivint, Inc.*, No. 6:22-cv-00034-ADA (W.D. Tex. Jan 10, 2022). Additionally, EcoFactor has six other pending cases in this District involving related technology. *EcoFactor, Inc. v. ecobee, Inc.*, No. 6:20-cv-00078-ADA (W.D. Tex. Jan 31, 2020); *EcoFactor, Inc. v. Vivint, Inc.*, No. 6:20-cv-00080-ADA (W.D. Tex. Jan. 31, 2020); *EcoFactor, Inc. v. Ecobee, Inc.*, No. 6:21-cv-00428-ADA (W.D. Tex. Apr. 28, 2021); *EcoFactor, Inc. v. Amazon.com, Inc.*, No. 6:22-cv-00068-ADA (W.D. Tex. Jan. 18, 2022); *EcoFactor, Inc. v. Resideo, Inc.*, No. 6:22-cv-00069-ADA (W.D. Tex. Jan. 18, 2022); *EcoFactor, Inc. v. Google LLC*, No. 6:22-cv-00350-ADA (W.D. Tex. Apr. 1, 2022). Earlier this year, this Court presided over a trial that involved the same parties as the present action, patents related to the Asserted Patents here, and overlapping accused products with the Accused Products in this case. *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex. Jan. 31, 2020) (jury trial began on Jan. 31, 2022) [hereinafter *Google I*]. The International Trade Commission (ITC) has overseen one trial involving the Asserted Patents. *Certain Smart Thermostats, Smart HVAC Systems, and Components Thereof*, Inv. No. 337-TA-1185 (USITC Oct. 23, 2019). The ITC has overseen another trial involving patents related to the Asserted Patents. *Certain Smart Thermostats*

*Systems, Smart HVAC Systems, Smart HVAC Control Systems, and Components Thereof*, Inv. No. 337-TA-1258 (USITC Feb. 26, 2021).

After answering EcoFactor's complaint, Google filed the instant motion to transfer. ECF No. 18. Google does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Northern District of California ("NDCA") is a more convenient forum, pointing to the location of willing witnesses, the location of relevant records, and the local interest in California. *Id*. at 1, 13. EcoFactor contends that the case should remain in the WDTX, pointing to, among other factors, the presence of unwilling witnesses in this District, Google's presence in the WDTX, and the other pending cases in this Court involving related technology. ECF No. 83 at 1.

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp*., 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar.*

*Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter "*Volkswagen I*"] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.    DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Neither party disputes that venue could be proper in the NDCA. ECF No. 18 at 5; ECF No. 83. Google commits acts of alleged

4

infringement and has a regular and established place of business within the NDCA. This Court therefore finds that venue would have been proper in the NDCA had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine if the NDCA is a clearly more convenient forum than the WDTX.

## A. The Private Interest Factors

### i. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

According to Google, all of the Google employees with knowledge of the technical and financial aspects of the Accused Products are located in the NDCA. ECF No. 18 at 6. However, EcoFactor identifies three Google employees in the WDTX that EcoFactor claims have relevant knowledge. ECF No. 83 at 6. Both parties appear to agree that EcoFactor's willing witnesses are located in the NDCA. ECF No. 18 at 6; ECF No. 83 at 7. The parties also identify the following other potential willing witnesses: two of the named inventors in the NDCA, EcoFactor's patent prosecution firm in Irvine, California, a named inventor in Idaho, a corporate witness in North Carolina, and Google employees in Europe, New York, and Chicago. ECF No. 18 at 7; ECF No. 83 at 6−7.

The Court considers (1) Google's employees in the NDCA, (2) Google's employees in the WDTX, (3) EcoFactor's willing witnesses in the NDCA, and (4) all other willing witnesses below.

   1.   Google's Employees in the NDCA

According to Google, most of its employees with knowledge of the technical and financial aspects of the Accused Products are located in the NDCA. ECF No. 18 at 6. Google's declarant identifies the following employees with relevant knowledge: ████████████████ ██████████████████████████████████████████████████ ██████████████████████████████. ECF No. 18-1 ¶¶ 7−17.

EcoFactor argues that many of the witnesses Google identifies are duplicative. ECF No. 83 at 4. EcoFactor claims that Messrs. ██████████████████████████ ████ would all provide similar testimony because they are all software engineers with overlapping knowledge of the technical aspects of the Accused Products. *Id.* Further, EcoFactor claims that Ms. Desai and Messrs. ████████████████ would all provide similar testimony on the financial aspects of the Accused Products. *Id.* EcoFactor claims that because only

a few Google employees testified in *Google I* and only one Google employee testified live before the ITC, the Court should not consider all of these individuals in the determination of this factor. *Id.* at 5. EcoFactor also argues these witnesses should not be given great weight because Google has failed to show how it would be inconvenienced if these witnesses are not able to testify live at trial. *Id.* Further, EcoFactor argues that the burden on these witnesses is lessened because they can use Google facilities in the WDTX. *Id.*

The Court finds that the NDCA-based employees that Google has identified would be relevant at trial. These employees work on the Accused Products and have knowledge that would be relevant to determining whether Google infringes the Asserted Patents and, if so, what damages are appropriate. The Court agrees with EcoFactor that it is unlikely that all of Google's identified witnesses would testify at trial. However, the Court does not discount these witnesses identified by Google. If any of these Google employees testify at trial, they would be more inconvenienced if this case remained in the WDTX than if it were transferred to the NDCA. And in fact, a few of the witnesses identified above were called to testify in this Court during the trial for *Google I*. Even though it is unlikely that each of these Google employees will testify, it is likely that a few will, as a few did in *Google I*. The NDCA is a more convenient forum for those witnesses.

The Court rejects EcoFactor's argument that the Court should discount these witnesses because Google has failed to show how it would be inconvenienced if its NDCA-based employees had to testify remotely. The relevant inquiry under this analysis is the "cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, 2021 WL 4427899, at *4. The Court is required to consider the inconvenienced posed to the *willing witness*, not the party seeking transfer. Even though Google has not shown how it would be inconvenienced if these

witnesses had to testify remotely, the Court still must consider the inconvenience to potential witnesses if this case remains in this District. For similar reasons, the Court rejects EcoFactor's argument that these witnesses would not be inconvenienced if the case remained in this District because they could use Google facilities in the WDTX. The relevant question here is whether maintaining the action in this District will require witnesses to travel a significant distance away from their homes and work for an extended period of time. *Id.* Even if the employees can use Google's facilities in the WDTX while they are in Texas testifying at trial, the employees would still be required to travel a significant distance and be away from their homes for a significant period of time. The Court concludes that the NDCA is a more convenient forum for all of Google's identified NDCA-based employees.

### 2.  Google's Employees in WDTX

EcoFactor identifies three Google employees in the WDTX: (1) ▮▮▮▮▮▮▮▮, Head of Energy Industry Partnerships, (2) ▮▮▮▮▮▮, Research Manager for Google Nest Hardware UX Research, and (3) ▮▮▮▮▮▮▮▮, Channel Sales and Activation Manager. ECF No. 83 at 6. EcoFactor argues that ▮▮▮▮▮▮ has knowledge relevant to damages, ▮▮▮▮▮▮ has knowledge relevant to infringement of the '371 Patent, and ▮▮▮▮▮▮ has knowledge relevant to damages. *Id.* EcoFactor claims that there may be other relevant witnesses in Texas that Google overlooked because it did not run a comprehensive search to identify relevant employees. *Id.* at 6 n.4. In its Reply, Google argues that the Court should not consider the Google employees identified by EcoFactor because in *Google I*, EcoFactor identified six relevant Google employees in the WDTX, but did not depose any of those witnesses or call them to testify at trial. ECF No. 87 at 1. Google further claims that ▮▮▮▮▮▮ is unlikely to testify because he was relied on in EcoFactor's transfer motion in *Google I*, but never deposed in that case. *Id.* at 2. Google claims that ▮▮▮▮▮▮ does not

have any relevant knowledge because she works purely on the physical attributes of the hardware products which are irrelevant to determining infringement of the '371 Patent. *Id.* Google claims that ▮▮▮▮▮▮ does not have relevant knowledge because he only assists HVAC and installation companies with sales and training. *Id.*

The Court does not wholly discount the presence of these Google employees in the WDTX. However, the Court notes that despite EcoFactor's identification of Google employees in this District in *Google I*, no Google employee from the WDTX testified at trial in that case. Further, no Google employee from this District has testified in the two ITC trials, one of which involved three of the four patents at issue in this case. The Court also questions the relevancy of these identified employees. Based on Google's representations, ▮▮▮▮▮▮ knowledge of the physical design of the Accused Products does not appear to be relevant to infringement of the '371 Patent, which relates to a system, method, and apparatus for identifying manual inputs and adaptive programming of a thermostat. Further, in the previous trials before this Court and the ITC, Messrs. ▮▮▮▮▮▮ were not called to testify regarding damages.

While the Court has doubts regarding the relevancy of these Google employees in the WDTX, the Court finds that this District is a more convenient forum for those employees.

### 3.  EcoFactor's Witnesses in the NDCA

Both parties agree that EcoFactor's willing witnesses are located in the NDCA. ECF No. 18 at 6; ECF No. 83 at 7. Google argues that the NDCA would be a more convenient venue for EcoFactor's witnesses in California because they would not have to travel to testify at trial. *Id.* Specifically, Google points to Glen Okita and Shayan Habib, who were called to testify in *Google I*. ECF No. 19 ¶ 13. Google claims that Messrs. Okita and Habib work and live in the NDCA. *Id.* In response, EcoFactor claims that Waco is a more convenient forum for its witnesses, Messrs.

Okita and Habib, because these witnesses are willing to travel to Waco as they have for other cases in this Court. ECF No. 83 at 7.

The Court rejects EcoFactor's argument that Waco is a more convenient forum for EcoFactor's witnesses because its witnesses, Messrs. Habib and Okita, are willing to travel to Waco. As this Court has previously held, "the Court will not weigh the convenience of a plaintiff's witnesses against transfer under this factor merely because the plaintiff attests that travel to this District would not represent an inconvenience upon witnesses with no apparent connection to this District." *XR Communications, LLC v. Google LLC*, No. 6:21-cv-00625-ADA, 2022 WL 3702271, at *4 (W.D. Tex. Aug. 26, 2022). Even though EcoFactor's witnesses are willing to testify in Waco, Waco is not necessarily a more convenient forum for EcoFactor's witnesses. EcoFactor cannot push this factor to weigh against transfer simply because it chose this venue. EcoFactor's "choice of venue is already baked into the movant's burden." *Id.* Mr. Habib's and Mr. Okita's willingness to testify in Waco does not weigh in the analysis of this factor.

The Court finds that the NDCA is a more convenient forum for EcoFactor's willing witnesses.

### 4.  All Other Willing Witnesses

Both parties have identified willing witnesses that are located far from both the WDTX and the NDCA. Google has identified two Google employees in Europe, ███████████ ████████████, with relevant knowledge of the Accused Products. ECF No. 18-1 ¶¶ 12, 16. EcoFactor has also identified two other Google employees with relevant knowledge: ██████████ in New York and ████████████ in Chicago. ECF No. 83 at 6−7. Because all of these identified potential witnesses are located far from both the NDCA and the WDTX, the Court concludes that neither forum is convenient for these individuals.

Google has also identified a few potential witnesses who do not qualify as willing witnesses. Google has identified the following individuals: two named inventors, John Steinberg and Leo Cheung, in the NDCA; EcoFactor's patent prosecution firm, located in Irvine, California; a named inventor, Scott Hublou, located in Idaho; and a nonparty corporate witness, Trane, U.S., Inc. located in North Carolina. The Federal Circuit has clarified that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). Because Google has not provided any indication that these witnesses are willing, they will be presumed to be unwilling and will be considered in the compulsory process factor below.

### 5. Conclusion

The Court finds this factor is weighs in favor of transfer. Google has thirteen willing witnesses in the NDCA, including eleven of its own employees and two EcoFactor employees. These willing witnesses would find a court in the NDCA a more convenient forum. While EcoFactor has also identified a few Google employees in the WDTX that would find this Court a more convenient forum, the Court has some doubt regarding the likelihood that these witnesses would be called to testify at trial. Because a greater number of the willing witnesses reside in the NDCA, the Court concludes this factor weighs in favor of transfer.

### ii.    *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from

11

the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

According to Google, the relevant sources of proof are located in the NDCA. ECF No. 18 at 9. Google claims that the relevant documents are created and maintained in that district. *Id.* Google argues that the presence of document custodians in the NDCA is relevant to the analysis of this factor. ECF No. 87 at 3. Google also points out that in *Google I* and the two cases before the ITC, EcoFactor has reviewed Google's source code for the Accused Products in the NDCA. ECF No. 18 at 9.

In response, EcoFactor argues that Google has not identified any physical evidence that is more easily accessible in the NDCA than in the WDTX. ECF No. 83 at 10. EcoFactor also argues that Google has not asserted that its electronic documents are stored in the NDCA. *Id.* EcoFactor claims that this factor is neutral at best because Google employees create and store documents in cloud-based storage applications, which can be accessed anywhere. *Id.* at 11. With regard to source code, EcoFactor complains that Google has not identified where the source code repositories are located, and EcoFactor notes that Google has a data center in Texas that could store the source code. *Id.* EcoFactor further argues that Google has shown in past cases that it can make its source code available anywhere. *Id.* at 12. EcoFactor also claims that some relevant documents are created and maintained by Google employees in the WDTX, including documents created and maintained by █████████ and Messrs. ████████████████ . *Id.* at 11.

The Court finds that there are likely documents created and maintained in the NDCA. The Court agrees with Google that the location of document custodians is relevant to the analysis of this factor. Even though Google has not identified physical documents located in the NDCA, the

presence of document custodians in the NDCA weighs in favor of transfer. However, the Court also agrees with EcoFactor that at least some potentially relevant documents are likely created and maintained by Google employees located in the WDTX.

The Court rejects EcoFactor's argument that this factor should weigh against transfer because the relevant electronically stored information is accessible anywhere. The Federal Circuit has held that it is an error not to consider under this factor "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Additionally, the Federal Circuit has rejected the reasoning that this factor is neutral where the relevant evidence can be accessed electronically. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). Even though electronically stored information may be equally accessible in both districts, the Court must still consider the location of the document custodians and where the documents are created and maintained when evaluating this factor.

The Court sympathizes with EcoFactor's frustration regarding the location of Google's source code repositories. The location of the source code repositories is relevant to the Court's analysis of this factor. However, the Court is unable to conclude, based on the presence of a Google data center in the State of Texas, that the relevant source code is located in this State. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *6 (Fed. Cir. Sept. 27, 2021) ("Nor does the fact Google stores documents in electronic form at data centers around the country weigh in favor of holding trial in Texas.").

Because more relevant documents are likely created and maintained in the NDCA than in the WDTX, the Court finds this factor favors transfer.

### iii.    *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, 2018 WL 4692486, at *3 n.1.

Google claims that this factor weighs in favor of transfer because multiple non-party witnesses, including two named inventors, John Steinberg and Leo Cheung, are located in the NDCA. ECF No. 18 at 8; ECF No. 19 ¶ 15. Google also claims that the NDCA has subpoena power over EcoFactor's business partner, Bidgely, Inc. ECF No. 18 at 8; ECF No. 19 ¶ 18. Google also argues that NDCA has subpoena power of EcoFactor's prosecution counsel in Irvine, California. ECF No. 18 at 8. Lastly, Google argues that all other non-party witnesses are outside the subpoena power of both the NDCA and the WDTX. *Id.*

In response, EcoFactor claims that this factor weighs against transfer because Google has partnerships with ▮▮▮ energy companies based in Texas to sell the Accused Products. ECF No. 83 at 7−8. EcoFactor argues that information from these companies may be needed to determine damages and potentially infringement. *Id.* at 8. EcoFactor also argues that more than fifty inventors

of prior art identified by Google in its invalidity contents are located in the WDTX. *Id.* at 9; ECF No. 18-3. Specifically, EcoFactor claims that prior artists related to two of the prior art references that Google relies on are located in the WDTX: (1) Resideo employees located in Austin with knowledge of the identified Resideo-Honeywell prior art systems and (2) Daikin employees that work at the Daikin Texas Technology Park in Waller, Texas with knowledge of the Daikin prior art system. *Id.*

EcoFactor also argues that the non-party witnesses identified by Google are outside the NDCA's subpoena power or unlikely to testify. *Id.* In particular, EcoFactor points out that one inventor of the Asserted Patents, Scott Hublou, is located in Idaho, outside of the subpoena power of both the WDTX and NDCA. *Id.* Additionally, another business partner of EcoFactor, Trane U.S., Inc. is located in North Carolina. *Id.* And the Rule 30(b)(6) witness for EcoFactor's other business partner, Bidgely, Inc., is located in Virginia. *Id.* at 10. EcoFactor also contends that the NDCA does not have subpoena power over EcoFactor's patent prosecution counsel because the firm is "hundreds of miles away from NDCA." *Id.* at 9. And EcoFactor claims that inventors Messrs. Steinberg and Cheung are irrelevant to this analysis because neither were deposed during *Google I* or the two ITC trials. *Id.* at 10. EcoFactor claims that even if these inventors are necessary for trial, Google would not be inconvenienced if these inventors could not testify live. *Id.*

In its Reply, Google argues that the ████ utility companies it partners with in Texas are irrelevant to this inquiry because there are also ████ utility customers in California and even more Accused Products in use there. ECF No. 87 at 2−3. Google also claims that these utility companies are not relevant third-party witnesses because Google does not sell directly to these utility companies. *Id.* at 3. With regard to the more than fifty prior artists identified by EcoFactor, Google argues that the Court should ignore these prior artists because EcoFactor failed to identify

these witnesses during venue discovery. *Id.* at 2. Google argues that these non-party witnesses do not weigh against transfer because it is "implausible" that EcoFactor would call prior art witnesses to invalidate its patents. *Id.* at 3. Google also argues that if these prior artists have relevant knowledge, EcoFactor violated its discovery obligations in one of the ITC cases by not identifying them in response to Google's interrogatory. *Id.*

To begin, the Court finds that Google has identified two third-party witnesses, Messrs. Steinberg and Cheung, who fall within the subpoena power of the NDCA. EcoFactor does not disagree that these two inventors of the Asserted Patents reside in the NDCA. EcoFactor also has not indicated that these inventors are willing to testify at trial. Instead, EcoFactor argues the Court should disregard these witnesses because Google would not be inconvenienced if they are unable to testify live at trial. But as the Federal Circuit has instructed, courts should not categorically reject a party's proposed witnesses when determining whether to transfer a case to another district. *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) ("This categorical rejection of Hulu's witnesses is entirely untethered to the facts of this case and therefore was an abuse of discretion."). While Mr. Steinberg and Mr. Cheung were not deposed during *Google I* or the two ITC trials, the Court will not rule out the possibility that Google may wish for these inventors to testify at trial in this case. Thus, the Court considers the presence of these two non-party witnesses in the NDCA in its determination of this factor.

The Court also finds that Google has identified EcoFactor's patent prosecution firm, which also falls within the subpoena power of the NDCA. Google argues that because EcoFactor's patent prosecution firm is within the reach of the NDCA's subpoena power, this factor should weigh in favor of transfer. ECF No. 18 at 8. To support its argument, Google points out that it subpoenaed EcoFactor's patent prosecution firm in prior cases. ECF No. 87 at 3. EcoFactor argues that the

Court should not consider its patent prosecution firm in the analysis of this factor because the firm is in southern California, "hundreds of miles away from the NDCA." ECF No. 83 at 9. However, EcoFactor's analysis here is flawed. Under the compulsory process factor, a court is able to compel a witness to testify if (1) the witness resides within 100 miles of the court or (2) if the witness resides within the state where the court is located if the witness is commanded to attend trial and would not incur substantial expense. FED. R. CIV. P. 45(c)(1). Here, EcoFactor's patent prosecution firm would likely fall within the NDCA's subpoena power because the firm is located in the same state, California, as the transferee forum. Thus, the Court will also consider witnesses from EcoFactor's patent prosecution firm within its analysis for this factor.

Next, the Court considers whether the presence of EcoFactor's business partner, Bidgely, Inc. in the NDCA impacts the transfer analysis. Google claims that because Bidgely, Inc. is located in the NDCA, this factor should weigh in favor of transfer. ECF No. 18 at 8. But EcoFactor points out that Bidgely, Inc.'s Rule 30(b)(6) witness is located in Virginia, not the NDCA. ECF No. 83 at 10. In its Reply, Google does not dispute that Bidgely, Inc.'s Rule 30(b)(6) witness is located in Virginia. ECF No. 87 at 2−3. Google also does not point to any other witness from Bidgely, Inc. that it believes would testify at trial. Because Google has not identified any witnesses from Bidgely, Inc. within the reach of the NDCA's subpoena power, the Court does not consider the presence of Bidgely, Inc. in the NDCA in the analysis for this factor.

The Court agrees with Google that the presence of partner utility companies within the reach of this Court's subpoena power should not impact the analysis of this factor. EcoFactor has identified ██████ utility companies that Google works with within this Court's subpoena power. ECF No. 83 at 8. But as Google notes in its Reply, it also partners with ██████ utility companies in California that fall within the NDCA's subpoena power. ECF No. 87 at 2. Thus, regardless of

whether this case remains in the WDTX or is transferred to the NDCA, there are utility companies available within the subpoena power of the presiding court. Testimony regarding Google's partnerships with these utility companies will be available in either forum. Thus, the Court does not consider the presence of these utility companies in this District in the determination of this factor.

With regard to the prior artists identified by EcoFactor, the Court rejects Google's argument that this Court must ignore these prior artists because EcoFactor failed to identify these witnesses during venue discovery. Google admits that EcoFactor identified representatives of Daikin and of various utility companies as part of its responses to Google's venue interrogatories. ECF 87-1 ¶ 9. Further, the prior artists identified by EcoFactor are all inventors of prior art references and systems identified by Google in its own invalidity contentions. ECF No. 83 at 9. Any fear that EcoFactor's delayed identification of these prior art witnesses could unfairly prejudice Google is eased by the fact that Google first identified these prior art references in its invalidity contentions.

The Court also rejects Google's argument that it should not consider the presence of these prior artists in this district because the "suggestion that it would call witnesses to invalidate its own patents is implausible." ECF No. 87 at 3. The Federal Circuit has counseled against ignoring prior art witnesses under this factor, even though prior art witnesses rarely testify at trial. *In re Hulu*, 2021 WL 3278194, at *3 ("[T]he district court erred by ignoring all of Hulu's proposed prior art witnesses for the reason that 'prior art witnesses are generally unlikely to testify at trial.'"). EcoFactor may have good reason to call prior art witnesses at trial. Because Google has relied on these prior art systems and references in its invalidity contentions, EcoFactor may wish to call

these witnesses to testify as to the specifics of the prior art systems to show why the prior art systems differ from the patented invention.

The Court concludes that the compulsory process factor is neutral. EcoFactor has identified a large number of third-party witnesses within the subpoena power of this Court, and Google has identified two inventor witnesses and witnesses from EcoFactor's patent prosecution firm within the subpoena power of the NDCA. While there is a greater quantity of non-party witnesses within this Court's subpoena power, all of the non-party witnesses in the NDCA are likely to have useful testimony for this case. Thus, the sheer quantity of non-party witnesses within this Court's subpoena power does not outweigh the few non-party witnesses within the NDCA's subpoena power.

### iv.    All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010). However, the Federal Circuit has suggested that it is an error to determine that this factor strongly disfavors transfer based primarily on co-pending litigation with pending motions to transfer. *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017).

Google argues that this factor favors transfer because Google has three pending actions against EcoFactor in the NDCA that have "substantial overlap" with this case. ECF No. 18 at 9; *Google LLC v. EcoFactor, Inc.*, No. 3:21-cv-01468 (N.D. Cal. Mar. 1, 2021); *Google LLC v. EcoFactor, Inc.*, No. 4:21-cv-03220 (N.D. Cal. Apr. 30, 2021); *Google LLC v. EcoFactor, Inc.*, No. 4:22-cv-00162 (N.D. Cal. Jan. 10, 2022). Google also argues that this Court's past trial experience with these parties and related patents does not weigh against transfer because the patents-at-issue in the previous case do not share a specification with the Asserted Patents here. ECF No. 18 at 10−11. Google also argues that keeping the case in the WDTX permits EcoFactor to engage in venue manipulation because EcoFactor dismissed an action in the District of Massachusetts to subsequently refile this case in the WDTX. *Id.* (citing *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021)). While EcoFactor has filed cases involving the same Asserted Patents in this Court, Google argues that these cases should not weigh against transfer because they involve different defendants and different accused products. *Id.* at 11. Google also claims this factor should not weigh against transfer because EcoFactor has filed complaints in other districts involving the Asserted Patents. *Id.* at 12 (citing *Datascape, Ltd. v. Dell Techs.*, No. 6:19-cv-00129-ADA, 2019 WL 4254069, at *3 (W.D. Tex. June 7, 2019)).

In response, EcoFactor argues that this factor weighs against transfer because it has filed nine cases that are currently pending in this Court and involve the same technology. ECF No. 83 at 13. EcoFactor argues that these cases involve overlapping issues of fact and law, such as claim construction, validity, conception, and damages. *Id.* EcoFactor also points to this Court's significant experience with related patents and the Accused Products from the jury trial in *Google I*. *Id.* EcoFactor argues that this Court has far more experience with EcoFactor's patents and Google's Accused Products than the NDCA. *Id.* at 14. EcoFactor disputes Google's claim of venue

manipulation and explains that it had the right to voluntarily dismiss the action in the District of Massachusetts and to refile in the WDTX. *Id.* at 13. Lastly, EcoFactor argues that the mere fact that it has filed litigation in other districts due to venue restrictions does not weigh against transfer. *Id.* at 14.

First, the Court agrees with Google that the three pending declaratory judgment actions in NDCA are relevant to this inquiry. However, the Court notes that all three of these cases are currently stayed. *Google LLC v. EcoFactor, Inc.*, No. 3:21-cv-01468 (N.D. Cal. May 4, 2021), ECF No. 17; *Google LLC v. EcoFactor, Inc.*, No. 4:21-cv-03220 (N.D. Cal. Oct. 11, 2022), ECF No. 135; *Google LLC v. EcoFactor, Inc.*, No. 4:22-cv-00162 (N.D. Cal. May 16, 2022), ECF No. 41. Further, only one of these cases reached the *Markman* stage before it was stayed. *Google LLC v. EcoFactor, Inc.*, No. 4:21-cv-03220 (N.D. Cal. July 22, 2022), ECF No. 125.

The Court agrees with EcoFactor that judicial efficiency can be served by keeping this case in the WDTX because this Court has related cases involving smart thermostat technology. In particular, this Court has two cases involving the same Asserted Patents. *EcoFactor v. ecobee, Inc.*, No. 6:22-cv-00033-ADA (W.D. Tex. Jan 10, 2022); *EcoFactor v. Vivint, Inc.*, No. 6:22-cv-00034-ADA (W.D. Tex. Jan 10, 2022). While Google points out that these two cases involve different defendants and different accused products, they will inevitably "involve the same or similar issues," including claim construction, patent validity, and conception. *PersonalWeb Techs., LLC*, 2013 WL 9600333, at *5. The overlapping legal and factual issues among these three related cases counsel against transfer. *Id.* The Federal Circuit has held that it is not an abuse of discretion to keep related cases together even when the cases do not involve the same defendants or the same accused products. *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

In addition to the two other co-pending cases asserting the same patents, this Court also has specific experience with the defendant and Accused Products in this case. This Court oversaw a jury trial between Google and EcoFactor earlier this year that involved overlapping accused products and related smart thermostat technology. *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex. Jan. 31, 2020) (jury trial began on Jan. 31, 2022). Even though, as Google points out, the specifications of the patents-at-issue in *Google I* are not identical to the specifications of the Asserted Patents, one of the patents-at-issue in *Google I* claims priority to the same provisional application as the '497 and '322 Patents at issue here. ECF No. 83 at 13. This Court also has five other cases filed by EcoFactor involving the same smart thermostat technology. *EcoFactor, Inc. v. ecobee, Inc.*, No. 6:20-cv-00078-ADA (W.D. Tex. Jan 31, 2020); *EcoFactor, Inc. v. Vivint, Inc.*, No. 6:20-cv-00080-ADA (W.D. Tex. Jan. 31, 2020); *EcoFactor, Inc. v. Ecobee, Inc.*, No. 6:21-cv-00428-ADA (W.D. Tex. Apr. 28, 2021); *EcoFactor, Inc. v. Amazon.com, Inc.*, No. 6:22-cv-00068-ADA (W.D. Tex. Jan. 18, 2022); *EcoFactor, Inc. v. Resideo, Inc.*, No. 6:22-cv-00069-ADA (W.D. Tex. Jan. 18, 2022). All five of these cases are past the *Markman* stage. *EcoFactor, Inc. v. ecobee, Inc.*, No. 6:20-cv-00078-ADA (W.D. Tex. Dec. 9, 2020), ECF No. 48; *EcoFactor, Inc. v. Vivint, Inc.*, No. 6:20-cv-00080-ADA (W.D. Tex. Dec. 9, 2020), ECF No. 46; *EcoFactor, Inc. v. Ecobee, Inc.*, No. 6:21-cv-00428-ADA (W.D. Tex. Mar. 22, 2022), ECF No. 37; *EcoFactor, Inc. v. Amazon.com, Inc.*, No. 6:22-cv-00068-ADA (W.D. Tex. Oct. 11, 2022), ECF No. 42; *EcoFactor, Inc. v. Resideo, Inc.*, No. 6:22-cv-00069-ADA (W.D. Tex. Oct. 11, 2022), ECF No. 41. Because of this Court's extensive experience with this technology and related patents, this Court can likely save judicial resources if the action remains in the WDTX.

The Court rejects Google's argument that this case should be transferred because EcoFactor engaged in venue manipulation. In support of its argument, Google cites *In re NetScout*

*Systems, Inc.* However, in *NetScout*, the Federal Circuit concluded that the practical problems factor did not weigh against transfer because the other co-pending cases had been filed *after* the motion to transfer venue had been filed, seemingly for the purpose of maintaining the action in the transferor forum. *In re NetScout Sys.*, 2021 WL 4771756, at *4. Here, the co-pending cases were all dismissed in the District of Massachusetts and refiled in this Court on the same date. Google has not shown that EcoFactor filed these co-pending cases in this Court for the purpose of manipulating the outcome of Google's Motion. And as EcoFactor notes, it had the right to voluntarily dismiss and refile these actions in a different venue. ECF No. 83 at 13; *Cedar Bay Grilling Co. Ltd. v. Canadian Fish Exporters Inc.*, No. 19-cv-12264, 2020 WL 2079445, at *1 (D. Mass. Apr. 30, 2020) ("[T]he right of a plaintiff voluntarily to dismiss an action before service of an answer or motion for summary judgment is absolute.").

Lastly, the Court also rejects Google's argument that this factor should not weigh against transfer because EcoFactor has filed cases in districts other than the WDTX. To support its argument, Google cites *Datascape, Ltd. v. Dell Techs., Inc.* But in that case, there were only three other co-pending cases in the WDTX and over ten cases in other district courts and the International Trade Commission. *Datascape, Ltd.*, 2019 WL 4254069, at *3. While this Court in *Datascape* stated that there was "little if any risk of judicial waste or inefficiency associated with transfer," the circumstances of this case differ. *Id.* Here, EcoFactor has filed fifteen cases in the WDTX. While EcoFactor has also filed cases in three other district courts and before the ITC, ECF No. 19-18, the circumstances here pose a greater risk of judicial waste than in *Datascape*. Not only does this Court have more pending related cases here than in *Datascape*, but this Court previously presided over a trial between the same parties involving similar patents and accused products.

In conclusion, there are pending related cases in both the NDCA and in this division of the WDTX. Thus, regardless of whether this case remains in this venue or is transferred to the NDCA, common legal issues can be handled expeditiously. However, because this Court's has six other pending cases involving the same technology and has trial experience with these parties and the Accused Products, the Court concludes that this factor should weigh at least slightly against transfer. Judicial efficiency is best served by keeping the three related cases involving the Asserted Patents together on the same schedule in a Court with familiarity with the technology and related patents. The Court notes that there is a pending motion for inter-district transfer in *EcoFactor, LLC v. Vivint, Inc.*, which is a one of the two cases pending in this Court involving the same Asserted Patents as those asserted here. *EcoFactor, LLC v. Vivint, Inc.*, No. 6:22-cv-00034-ADA (W.D. Tex. May 2, 2022), ECF No. 16. The Federal Circuit has suggested that when co-pending cases asserting related patents also have pending motions to transfer venue, the co-pending cases should be discounted in determining whether to transfer venue. *See In re Google, Inc.*, 2017 WL 977038, at *2. In line with Federal Circuit law, the Court discounts the impact of *EcoFactor, LLC v. Vivint, Inc.* on the analysis of this factor. However, the Court still concludes that this factor weighs slightly against transfer based on all of the related patent cases filed in this District and the Court's familiarity with the technology at issue.

## B.  The Public Interest Factors

### i.  *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the

transferee district court should not alone outweigh all those other factors." *Id.* The Fifth Circuit has concluded that this factor weighs against transfer where the case "appears to be timely proceeding to trial" in its current venue. *In re Planned Parenthood Federation of America, Inc.*, No. 22-11009, 2022 WL 16549164, at *3 (5th Cir. Oct. 31, 2022).

Google argues that this factor is neutral because "[f]or patent cases, the WDTX and NDCA have historically similar times to jury trial." ECF No. 18 at 15. However, Google admits that this Court brings patent cases to trial 1.6 months faster than the NDCA. *Id.* Google also argues that this factor should be neutral because there is no significant difference between the caseloads per judge in the NDCA and the Waco Division of the WDTX. *Id.* In response, EcoFactor argues that this factor weighs against transfer because this Court brings patent cases to trial within 730 days in comparison to 1,196 days in the NDCA. ECF No. 83 at 14. EcoFactor also argues that Google's time-to-trial statistics are "outdated." *Id.* at 15. In its Reply, Google disagrees with EcoFactor's assertion that Google's time-to-trial statistics are "outdated." ECF No. 87 at 5 n.5. Google also argues that EcoFactor's time-to-trial statistics are inaccurate because they include bench trials. *Id.*

While the Federal Circuit has previously held that there are "no significant differences in caseload or time-to-trial statistics" between the WDTX and the NDCA, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021), recent statistics show that this Court has been able to bring cases to trial within two years.[1] While both Google and EcoFactor dispute the accuracy of

---

[1] *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months

the opposing party's data, time-to-trial statistics from both parties suggest that this Court brings cases to trial faster than the NDCA. ECF No. 18 at 15; ECF No. 83 at 14. The Federal Circuit has emphasized the importance of rapid disposition of patent cases. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). In view of Federal Circuit law and the available time-to-trial statistics, the Court finds this factor weighs at least slightly against transfer.

### ii.    *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252,

---

from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Google claims that the NDCA has a strong local interest in this case because both EcoFactor and Google are "at home" in the NDCA. ECF No. 18 at 13. Further, Google concludes that the NDCA has a greater connection to the events that gave rise to the suit because all of the research, design, and development of the Accused Products took place in the NDCA. *Id.* Google also claims that the suit calls into question the work and reputation of individuals in the NDCA, including Google engineers and EcoFactor's inventors. *Id.* at 13−14. Lastly, Google argues that EcoFactor cannot rely on Google's general presence in Austin or Google's sales within the WDTX to create a local interest. *Id.* at 14.

In response, EcoFactor argues that the WDTX has a strong local interest in this case because Google has a substantial presence in this District and employs thousands of people here. ECF No. 83 at 15. Furthermore, as discussed above, EcoFactor argues that there are employees who work with the Accused Products located in this District. *Id.* And EcoFactor also argues that the WDTX has a local interest because Google partners with energy companies in the District and many prior artists live here. *Id.*

The Court finds that the NDCA likely has a strong local interest in this suit. Google operates its headquarters in the NDCA and both parties agree that Google employees that work on

the Accused Products are located in the NDCA. *See* ECF No. 18-1 ¶ 6; ECF No. 83 at 4−5. Further, the NDCA has a local interest based on EcoFactor's presence in the NDCA. But the Court also finds that the WDTX has a local interest in this suit. As EcoFactor explains in its briefing, Google employees that work on the Accused Products are located in the WDTX, and Google partners with utility companies in this District (as it also does in the NDCA). Further, while Google's headquarters are located in NDCA, Google has a significant presence in the WDTX, including thousands of square feet of office space and thousands of employees.

While both the NDCA and the WDTX have a local interest in the outcome of this litigation, the Court finds that NDCA's interest is likely more significant because both parties are headquartered there and many of the events giving rise to the litigation occurred there. Thus, the Court determines that this factor weighs slightly in favor of transfer.

### iii.     *Familiarity of the Forum with the Law That will Govern the Case*

Google and EcoFactor agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 18 at 15; ECF No. 83 at 15. The Court agrees.

### iv.     *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Google and EcoFactor agree that this factor is neutral—there are no potential conflicts here. ECF No. 18 at 15; ECF No. 83 at 15. The Court agrees.

## IV.     CONCLUSION

Having considered the private and public interest factors, the Court finds that three of the factors are neutral, two slightly disfavor transfer, and three favor transfer to the NDCA to varying degrees. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a *clearly* more convenient forum. Here, the inconvenience to willing witnesses, the relative ease of access of burdens of proof,

and local interests favor the NDCA. However, the practical problems factor and the court congestion factor weigh slightly against transfer. The Court finds that Google has met its burden. The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | In favor of transfer |
| Cost of attendance for willing witnesses | In favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Slightly against transfer |
| Administrative difficulties flowing from court congestion | Slightly against transfer |
| Local interest | Slightly in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Google's Motion to Transfer Venue to the Northern District of California is **GRANTED** (ECF No. 18).

**SIGNED** this 14th day of November, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE